IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. CR107-108 |
| MARYA FIELDS TAPP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# O R D E R

Before the Court is "Defendant Marya Fields Tapp's Motion for the Court to Determine Whether Former AUSA Richard H. Goolsby, Sr. May Appear in this Case and Represent Her as Co-Counsel." (Doc. 28.)[1] The issue before the Court is whether Mr. Goolsby's representation of Defendant Tapp is precluded by the Ethics in Government Act of 1978, 18 U.S.C. § 207. For the following reasons, Defendant's Motion is **DENIED**, and Mr. Goolsby is precluded from appearing on behalf of Defendant Tapp.

## BACKGROUND

Until his retirement from government service on August 31, 2007, former Assistant United States Attorney ("AUSA")

---

[1] The Government's Motion to File Exhibits Under Seal is **GRANTED**. (Doc. 34.) Defendant's Motion to Produce additional documents regarding this issue is **DENIED AS MOOT**. (Doc. 39.) "Defendant Marya Fields Tapp's Motion Seeking Clarification About Whether Former AUSA Goolsby May Assist in Her Defense at the Hearing" is also **DENIED AS MOOT**. (Doc. 46.)

Richard H. Goolsby, Sr. was the Augusta Branch Office Chief of the United States Attorney's Office for the Southern District of Georgia ("USAO"). In that capacity, he was the immediate supervisor for all of the AUSAs in the Augusta Branch Criminal Division, and he reviewed and signed indictments prepared by them. AUSA Patricia Johnson was one of the AUSAs working under his supervision.

Several months after his departure from the USAO, Goolsby contacted that office regarding his potential representation of Defendant in this case. The Government contends that because this matter was "actually pending" with the USAO prior to Goolsby's departure, he is precluded from representing Defendant in this case. Defendant, however, contends that Goolsby does not have a conflict of interest because the matter was not pending with the USAO until after August 31, 2007.

The Court held a hearing in this matter on January 30, 2008 in Augusta, Georgia. The Court heard testimony from Goolsby, AUSA Patricia Johnson, several other AUSAs, and James Tredore, a former Richmond County Sheriff's Office Investigator and Task Force Officer with the Drug Enforcement Administration. They testified about the policies and practices of the USAO and about their involvement in the investigation of Defendant.

For the defense, Goolsby testified that he had no personal involvement in or knowledge of the Tapp matter prior to his departure from the USAO. Defense counsel also elicited testimony from several AUSAs that a file was not "opened" in the USAO on the "LIONS" computer system (or with a "matter initiation form") until September 7, 2007 or later. In addition, Tredore and Johnson both testified that Tredore did not deliver any case reports or other documents regarding the case to the USAO until sometime in September 2007.

However, the Government presented evidence that Tredore and Johnson communicated about this case as early as July 23, 2007. Johnson testified that she had "multiple conversations" with Tredore beginning in July and continuing through August 16, 2007. Tredore stated that he was in contact with Johnson to tell her what was going on and that he "sometimes" called her to tell her about controlled buys. Further, Tredore testified that Johnson assisted him in drafting and/or reviewing an affidavit requesting "the authority to surreptitiously install a GPS device in TAPP'S vehicle and to monitor the movements of TAPP." (Hearing Ex. 4.) Shortly thereafter, using an affidavit "based of off" the affidavit prepared in consultation with Johnson, Tredore obtained a state search

3

warrant for Tapp's residence, which was executed on August 16, 2007.

The exhibits offered by the Government support this testimony. A DEA Report of Investigation (DEA-6 Form) prepared by Tredore states that he discussed the investigation with Johnson on July 23, 2007. (Hearing Ex. 5.) Several other documents also refer to Johnson's involvement in the investigation, including (1) an Operation Plan prepared by Tredore on July 23, 2007, (2) an internal e-mail written by Tredore on July 24, 2007, and (3) an Operation Plan prepared by Tredore on August 16, 2007. (Hearing Exs. 1, 2, & 3.)

## ANALYSIS

I. **Whether 18 U.S.C. § 207 applies to Mr. Goolsby**

The Ethics in Government Act places the following restrictions on former supervisory AUSAs:

> [W]ithin 2 years after the termination of his or her service [a former supervisory AUSA may not] knowingly make[], with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States . . . on behalf of any other person . . . in connection with a particular matter—
> (A) in which the United States . . . is a party or has a direct and substantial interest,
> (B) which such person knows or reasonably should know was <u>actually pending under his or her official responsibility</u> as such officer or employee within a period of 1 year before the

> termination of his or her service or employment with the United States . . ., and (C) which involved a specific party or specific parties at the time it was so pending. . . .

18 U.S.C. § 207(a)(2) (emphasis added).[2]

The term "official responsibility" is defined as "the direct administrative or operating authority, whether immediate or final, and either exercisable alone or with others, and either personally <u>or through subordinates</u>, to approve, disapprove, or otherwise direct Government action." 18 U.S.C. § 202(b) (emphasis added). A matter can be under a person's "official responsibility" even where he or she lacks any personal knowledge of the matter. 5 C.F.R. § 2637.202(b)(4). <u>See also</u> Post-Employment Conflict of Interest Restrictions, 68 Fed. Reg. 7844, 7879 (2003) ("It is not necessary that a former employee have known during his Government service that the matter was actually pending under his official responsibility.")

According to the Office of Government Ethics, a matter is "actually pending" under a supervisory AUSA's official responsibility:

> "[I]f it has been referred to the [supervisory AUSA] for assignment or has been referred to or

---

[2] The parties agree that the permanent restrictions, set forth in 18 U.S.C. § 207(a)(1), do not apply to Mr. Goolsby, because he did not participate "personally and substantially" in this case while at the USAO.

5

> is under consideration by any person he supervises, including a subordinate. A matter remains pending even when it is not under 'active' consideration. There is no requirement that the matter must have been pending under the employee's official responsibility for a certain length of time." Id.

In the instant case, the Court finds that there is no evidence that Goolsby knew about the Tapp matter or had any knowledge that the matter might be under consideration by the USAO during his Government service. The Court finds that Goolsby had no personal discussions about the matter either with agents or with other AUSAs.

However, the evidence presented at the hearing shows that AUSA Johnson was involved in the Tapp matter as early as July 23, 2007. There is a record of her continuing involvement through August 16, 2007, and both she and Agent Tredore testified that they had multiple conversations regarding the investigation of Defendant. Defendant argues that the Court should not interpret the phrase "actually pending" so broadly as to include "thinking about," "one call, that's all," or a single errant contact between an AUSA and an investigator. But that is not the issue presented by the facts of this case. Here, the evidence shows that there was a series of communications between Johnson and Tredore as they developed a case for possible

prosecution and that Tapp was a subject of that investigation.

For this reason, the Court holds that the matter was "actually pending" under Goolsby's official responsibility prior to his departure from the USAO on August 31, 2007. And in light of the strictly worded nature of the Ethics in Government Act, the Court finds this is the type of conflict of interest that Congress sought to prevent. Accordingly, Goolsby is precluded by § 207 from representing Defendant in this case.

## II. Whether § 207 is outweighed by Defendant's Sixth Amendment right to counsel

The Court also finds that, under the facts of this case, the provisions of the Ethics in Government Act are not outweighed by Defendant's Sixth Amendment right to counsel. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." An essential part of that right is the accused's ability to select the counsel of his choice. See Powell v. Alabama, 287 U.S. 45, 53, 53 S. Ct. 55, 58, 77 L. Ed. 158 (1932). A criminal defendant therefore enjoys "a presumptive right" to counsel of choice, and courts should hesitate to disqualify defense counsel. United States v. Ross, 33 F.3d

7

1507, 1522-23 (11th Cir. 1994)(citing <u>Wheat v. United States</u>, 486 U.S. 153, 164, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988)).

The right to counsel of choice, however, is not absolute. E.g., <u>Powell</u>, 287 U.S. at 53. When an actual conflict of interest exists, the client may be denied effective assistance of counsel, and the attorney may be disqualified. <u>Ross</u>, 33 F.3d at 1523. But the presumption in favor of counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." <u>Wheat</u>, 486 U.S. at 164.

In addition, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." <u>Wheat</u>, 486 U.S at 160. When balancing a defendant's right to counsel against an attorney's conflict, "[t]he evaluation of the facts and circumstances of each case . . . must be left primarily to the informed judgment of the trial court." <u>Id.</u> at 164.

In the instant case, the Court has held that Mr. Goolsby is precluded from appearing on behalf of Defendant Tapp under § 207. After considering the Court's interest in ensuring the fairness of these proceedings and

Congress's intention to prevent the appearance of impropriety on the part of former Government employees, the Court holds that the application of § 207 to the facts of this case is not precluded by Defendant's Sixth Amendment Rights.

**CONCLUSION**

The Court finds that Goolsby has a conflict of interest in the case and may not appear on behalf of Defendant Tapp. However, the Court also <u>specifically</u> <u>finds</u> that Goolsby has done nothing unethical or unprofessional and has not violated the Ethics in Government Act in any way. The Court's holding is based upon the strict nature of the Act, in which Congress sought to avoid even the appearance of impropriety in situations such as this. And although Goolsby may not appear in this case or sign pleadings on behalf of Tapp, he may continue to participate "behind the scenes" and in an advisory capacity.

Finally, the Court's ruling in this case regarding whether the matter was actually pending in the USAO is not intended to establish a precedent for any other court. This decision is based only on the specific facts of this case. It is the Court's opinion that these cases must be considered on an individualized basis only after a careful

consideration of the facts unique to each case. See Wheat, 486 U.S at 164.

SO ORDERED this 6th day of February, 2008.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA